```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
THOMAS J. TROIANO,                  :
                                    :
                Plaintiff,          :
                                    :    06 Civ. 523 (LAP)
        -against-                   :
                                    :    OPINION AND ORDER
LAURA ELIZABETH MARDOVICH           :
(a/k/a LAURA BALEMIAN),             :
individually, as Guardian and as    :
Payee Representative for her four   :
minor children, and as              :
Administratrix of the Estate of     :
Edward J. Mardovich,                :
                                    :
                Defendant.          :
------------------------------------x
```

LORETTA A. PRESKA, United States District Judge:

Plaintiff Thomas J. Troiano, a Florida resident, seeks a declaratory judgment that he may rightfully retain some $ 2 million in attorney's fees for services rendered to Defendant Laura Elizabeth Mardovich (a/k/a Laura Balemian), a New York resident, and her children in connection with the death of her husband in the World Trade Center on September 11, 2001. Defendant moves to dismiss, asking this Court to abstain from exercising its jurisdiction. For the reasons stated below, the action is stayed pending the outcome of a related proceeding in Suffolk County Surrogate's Court.

BACKGROUND

Edward Mardovich, Defendant's husband, died on September 11, 2001, as a result of the World Trade Center terrorist attacks. Compl. ¶ 3.[1] In the days following the attacks, Mrs. Mardovich contacted Mr. Troiano, a neighbor and friend, and asked him to return to New York from his Florida home to help resolve her family's numerous legal issues. Compl. ¶ 9. Plaintiff agreed and soon began to act as Defendant's family lawyer. Compl. ¶ 11.

On October 15, 2001, Mrs. Mardovich signed a retainer agreement (the "Retainer Agreement") with Mr. Troiano on behalf of herself and her four minor children and as administratix of her husband's estate. Pl. Mem.,[2] Ex. A. The Retainer Agreement covered survivors' claims for wrongful death, as well as claims for Mr. Mardovich's personal injuries or pain and suffering. The Retainer Agreement provided, <u>inter</u> <u>alia</u>, that Mrs. Mardovich pay one-third of the award from any "legal, governmental, quasi-governmental, or non-profit agency responsible for the September 11, 2001 crash or any recoverable claims resulting after the September 11, 2001 destruction of the World Trade Center." Pl. Mem., Ex. A.

---

[1] "Compl." refers to the Complaint filed January 24, 2006.
[2] "Pl. Mem." refers to the Memorandum of Law in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss filed April 3, 2006.

Mr. Troiano filed a claim on behalf of Mrs. Mardovich and the Mardovich children with the September 11th Victim Compensation Fund of 2001 (the "Fund"). Compl. ¶ 23. The Fund compensates for both economic and non-economic losses due to the death of September 11th victims. In all cases, the non-economic loss was prescribed at a set amount of $250,000 per victim and $100,000 for each dependent. 28 C.F.R. § 104.44. The Fund imposed a presumptive award limit of $3 million that could be breached only upon "extraordinary circumstances." Compl. ¶ 17. On June 9, 2003, the Special Master granted Defendant and her children a "presumptive" award of $1,087,240.40.[3] Compl. ¶ 24. Mr. Troiano persuaded Mrs. Mardovich to appeal the size of this award and represented her at an evidentiary hearing. Compl. ¶ 25. After the hearing, the Fund issued Mrs. Mardovich and her family a final award of $6,656,151.40. Pl. Mem. at 4. Pursuant to the Retainer Agreement, Mrs. Mardovich approved the payment of one-third of the Fund award (more than $2 million) to Plaintiff on January 3, 2004. Compl. ¶ 30.

The Suffolk County Surrogate's Court has presided over the estate of Edward Mardovich since November 2001. Pl. Mem. at 4. In April 2005, the guardian ad litem for Mrs. Mardovich's minor children objected to an accounting of Mr. Mardovich's estate because it did not include the Fund award and the legal fees

---

[3] The award amounts listed are the amounts after offsets.

3

paid, which the guardian contends are excessive and not in the best interests of the children. Morken Aff.[4] ¶ 6, Ex. C. In response to the objection, the Surrogate, Hon. John M. Czygier, Jr., required Plaintiff and Joseph Sardelli (an attorney Mr. Troiano hired to assist him in connection with the Fund hearing) to appear before the court to justify their legal fees. Sardelli Aff. ¶ 11. Mr. Troiano and Mr. Sardelli appeared before the Surrogate for the limited purpose of contesting subject matter jurisdiction. Sardelli Aff.[5] ¶¶ 12-14. The proceeding is currently pending.

Mr. Troiano filed suit in this Court seeking a declaration that he is entitled to retain the fee he collected, that Defendant was authorized to issue payment of the fee, and that Mrs. Mardovich is bound by her approval of such payment. Compl. ¶¶ 33-34. Mr. Troiano contends that this Court has exclusive jurisdiction to rule on the lawfulness of his attorney fees. Pl. Mem. at 5-9. Mrs. Mardovich contends that subject matter jurisdiction is lacking or, in the alternative, that this Court should abstain from exercising its jurisdiction because Suffolk County Surrogate's Court is the appropriate forum for resolution of matters pertaining to the estate of Edward Mardovich.

---

[4] "Morken Aff." refers to the Affidavit of John R. Morken sworn to on March 30, 2006.
[5] "Sardelli Aff." refers to the Affidavit of Joseph J. Sardelli sworn to on March 28, 2006.

4

DISCUSSION

A. Standard of Review

As this matter comes before the Court on a motion to dismiss, the Court accepts the factual allegations in Plaintiff's Complaint and draws all inferences in favor of Plaintiff. See Karedes v. Ackerly Group, 423 F.3d 107, 113 (2d Cir. 2005). It is well-settled that a case may not be dismissed "unless the court is satisfied that the complaint cannot state any set of facts that would entitle the plaintiff to relief." Miller v. Wolpoff & Abramson, 321 F.3d 292, 300 (2d Cir. 2002)(citing Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001). The Court, however, need not give "credence to plaintiff's conclusory allegations" or legal conclusions offered as pleadings. Cantor Fitzgerald v. Lutnik, 313 F.3d 704, 709 (2d Cir. 2002) (citing Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001)); Van Carpals v. S.S. American Harvester, 297 F.2d 9, 11 n.1 (1961) (Friendly, J.) ("[I]n federal pleading there is no need to plead legal conclusions; these are for the court to apply.").

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court may consider materials of which the plaintiff had notice and relied upon in framing his complaint, as well as materials of which judicial notice may be taken. See

Kavowras v. New York Times, 328 F.3d 50, 57 (2nd Cir. 2003); Cortec Indus. v. Sum Holding, 949 F.2d 42, 48 (2d Cir. 1991). Where subject matter jurisdiction is challenged, the Court is "free to consider materials extrinsic to the complaint" in deciding the motion to dismiss. Moser v. Pollin, 294 F.3d 335, 339 (2d Cir. 2002).

B. Jurisdiction Under The Air Transportation Safety And Systems Stabilization Act

Plaintiff argues that the Air Transportation Safety and Systems Stabilization Act of 2001 ("ATSSSA"), Pub. L. No. 107-42, 115 Stat. 230 (2001) (codified as amended at 49 U.S.C. § 40101), vests this Court with exclusive jurisdiction over all matters relating to the September 11th attacks, including the Fund, and thus precludes the Surrogate's Court from ruling on his attorney's fees. Compl. ¶ 8. However, the ATSSSA does not require this Court to exercise exclusive jurisdiction over this particular controversy.

Congress enacted the ATSSSA, which established the Fund, shortly after the September 11th attacks. In addition to establishing the Fund, § 408(b)(3) of the ATSSSA provides the United States District Court for the Southern District of New York with "original and exclusive jurisdiction over all actions

brought for any claim . . . resulting from or relating to the terrorist-related aircraft crashes of September 11, 2001."

Despite this broad jurisdictional provision, not every claim stemming from the September 11th attacks must be brought in the Southern District of New York. For example, the Court of Appeals has held that § 408(b)(3) does not vest this district with exclusive jurisdiction over "actions involving economic losses that would not have been suffered 'but for' the events of September 11, but otherwise involve no claim or defense raising an issue of law or fact involving those events." Canada Life Assurance Co. v. Converium Ruckversicherung (Deutschland) AG, 335 F.3d 52, 59 (2003). Another case, Hickey v. City of New York (In re World Trade Ctr. Disaster Site Litig.), 270 F.Supp. 2d 357, 362-63 (S.D.N.Y. 2003), held that claims for respiratory injuries based on post-attack exposures are not subject to the ATSSSA's exclusive jurisdiction provision. In addition, Congress also amended the ATSSSA to exclude civil actions to recover collateral source obligations from the exclusive jurisdiction provision. See 49 U.S.C. § 40101 note; Pub. L. No. 107-71, § 201(b), 115 Stat. 646 (2001).

In Canada Life, the Court of Appeals found the statutory language of § 408(b)(3) ambiguous and interpreted the jurisdictional provision in light of Congressional intent. 335 F.3d at 58. Congress included § 408(b)(3) to ensure consistency

and efficiency in resolving all actions resulting from the September 11th attacks and to avoid the "undesirable effects" of litigation in various state and federal courts. Id. at 58-59. The Court of Appeals specified the following undesirable effects Congress sought to avoid by enacting § 408(b)(3):

> inconsistent or varying adjudications of actions based on the same sets of facts; adjudications having a preclusive effect on non-parties or substantially impairing or impeding non-parties' abilities to protect their rights; victims or their survivors without any possibility of recovery when the limits of liability have been exhausted in other lawsuits; the difficulties in mediation when defendants are sued in multiple state and federal courts, and the waste of private and judicial resources in multiple state and federal courts hearing cases involving the same factual and legal issues.

Id. at 59. This case involves determining under state law whether Plaintiff's actions justify the size of his fee and does not concern an issue of fact or law particular to the September 11th attacks. As such, this case does not present the negative effects which Congress sought to avoid through § 408(b)(3).

State courts have exercised jurisdiction in matters relating to the Fund. The New York Appellate Division recently affirmed a denial of a motion to dismiss in a dispute over Fund award distribution. Cruz v. McAneny, 816 N.Y.S.2d 486 (2d Dept. 2006). In a prior case, the New York County Surrogate's Court

8

ordered counsel to submit affidavits justifying the legal fees earned from a Fund award. In re Estate of Gomez, 5 Misc. 3d 534, 785 N.Y.S.2d 866 (Surr. Ct. N.Y. County 2004).

Accordingly, the ATSSSA neither confers exclusive jurisdiction over this matter upon this Court nor prohibits the exercise of jurisdiction by the Suffolk County Surrogate's Court. Although the ATSSSA does not confer exclusive federal question jurisdiction here, jurisdiction exists under diversity of citizenship, 28 U.S.C. § 1332(a).[6]

C. Brillhart Abstention

The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). Under this permissive language, district courts are given broad discretion over whether to exercise jurisdiction in declaratory judgment actions. Wilton v. Seven Falls Co., 515 U.S. 277, 282-83 (1995); Dow Jones & Co., Inc. v. Harrods Ltd., 346 F.3d 357, 359 (2d Cir. 2003). Where a parallel state court proceeding addresses matters in common with

---

[6] Although Mrs. Mardovich initially disputed Mr. Troiano's Florida citizenship, that argument has not been pursued.

a federal district court proceeding, the Supreme Court has announced a standard to guide the district court's exercise of jurisdiction. See Wilton, 515 U.S. at 283; Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 495 (1942). This standard is commonly known as the Brillhart abstention doctrine.

The Brillhart abstention doctrine simply states that a stay or dismissal is appropriate when the federal action could be better settled in the pending state court proceeding. Wilton, 515 U.S. at 282. In exercising its discretion, a district court should yield to "considerations of practicality and wise judicial administration." Id. at 288. The Supreme Court has not set forth rigid factors under the Brillhart doctrine for the district court to consider. However, the Court of Appeals has discussed several useful guidelines: the scope of the parallel state litigation and the nature of defenses available there; whether the claims of all parties in interest can satisfactorily be adjudicated in the state proceeding; whether necessary parties have been joined; and whether such parties are amenable to process in that proceeding. Youell v. Exxon Corp., 74 F.3d 373, 375-76 (1996).

Using the above guidelines, the subject matter presented here would be better resolved in the pending Surrogate's Court proceeding. The scope of the Surrogate's Court proceeding is broader, but Plaintiff will have the same opportunity to justify

10

his fee. See Stortecky v. Mazzone, 650 N.E.2d 391, 395 (N.Y. 1995) (holding that Surrogate has the authority to inquire into the reasonableness of counsel's fee); In re Estate of Gomez, 5 Misc. 3d 534, 538; 785 N.Y.S.2d 866, 870 (Surr. Ct. N.Y. County 2003) (allowing counsel to submit affidavits to justify their fees under the Fund). All necessary parties have been ordered before the Surrogate and, indeed, have been served and have appeared, either generally or, in the case of Messrs. Troiano and Sardelli, specially.

There are additional reasons that weigh in favor of staying this action in deference to the Surrogate's Court. State court is better suited to this action because state law governs attorney's fees under the Fund. See September 11th Victim Compensation Fund of 2001, 66 Fed. Reg. 66,274, 66,280 (Dec. 21, 2001) ("Although the Department's regulations do not set specific limits on attorneys fees separate from those existing in state law . . . , the Department believes that contingency arrangements exceeding 5% . . . would not be in the best interest of the claimants."). In determining whether Plaintiff's fees are excessive, a court will need to consider the best interests of the Mardovich children, an issue far better suited to resolution in Surrogate's Court than federal district court. Moreover, New York has a strong interest in regulating attorney conduct in that State. Finally, it would be

unnecessarily duplicative for this Court to interfere with an ongoing state court proceeding and effectively participate in a "race to res judicata." See Nat'l Union Fire Ins. Co. v. Turbi ae Angustia, 05 Civ. 2068 (DLC), 2005 U.S. Dist. LEXIS 18141, at *10 (S.D.N.Y. Aug. 24, 2005). The Surrogate's Court first confronted the issue of Mr. Troiano's fees over a year ago, in July 2005. Pl. Mem. at 4; Sardelli Aff. ¶ 11. Allowing the state court to continue handling this issue will avoid multiplying the proceedings.

Although Mrs. Mardovich brings a motion to dismiss, I elect instead to stay this action so that "it can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." Wilton, 515 U.S. at 288 n.2.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion (dkt. no. 9) is granted to the extent that this action is stayed pending proceedings in the Suffolk County Surrogate's Court. The Clerk of the Court is directed to place this action on the suspense calendar.

SO ORDERED

August 10, 2006

*Loretta A. Preska*

Loretta A. Preska, U.S.D.J.

12